## Case No. 11,495.

### QUANTITY OF DISTILLED SPIRITS.

[3 Ben. 552; 3 Am. Law T. Rep. U. S. Cts. 10; 11 Int. Rev. Rec. 3; 10 Int. Rev. Rec. 206; 17 Pittsb. Leg. J. 17.] [1]

District Court, S. D. New York. Dec., 1869.

INTERNAL REVENUE ACT OF JULY 20, 1868 — CANCELLING STAMPS — RECTIFIER'S BOOKS—KNOWING AND WILFUL NEGLECT.

1. Empty barrels were found on the premises of a rectifier, on which were stamps which had not been cancelled as required by the 43d section of the internal revenue act of July 20, 1868 (15 Stat. 125). *Held,* that if the rectifier knew that the stamps were not cancelled, and it was his will. freely exercised, that they should not be cancelled, when the barrels were emptied,

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 10 Int. Rev. Rec. 206, and 17 Pittsb. Leg. J. 17, give only partial reports.]

then he had "knowingly and wilfully" neglected to comply with the 43d section, and, under the 96th section of the same act, all distilled spirits or liquors owned by him were forfeited.

[Cited in U. S. v. Learned, Case No. 15,580. Criticised in U. S. v. Ninety-Five Barrels of Distilled Spirits, Id. 15,889. Cited in U. S. v. One Thousand Four Hundred and Twelve Gallons of Distilled Spirits, Id. 15,960; U. S. v. Four Thousand Eight Hundred Gallons of Spirits, Id. 15,153; U. S. v. Bayaud, 16 Fed. 384.]

2. A rectifier must himself make the entries in the book required by the 45th section of the same act. and his failure to do so subjects him to a similar penalty.

At law.

Thomas Simons, Asst. Dist. Atty., for the United States.

Thomas Harland and Daniel G. Rollins, Jr., for claimant.

BLATCHFORD, District Judge (charging jury). This case, which is now to be submitted to your consideration, is one involving very important questions under the internal revenue laws of the United States. It is the first case that has come before this court under the act of July 20, 1868 (15 Stat. 125), and it concerns the construction of the 96th section of that act, which is an exceedingly important section in reference to the interests of the government, and of those engaged in distilling, rectifying, and dealing in liquors and in manufacturing cigars, however it shall be construed.

The charge in this case against the property seized, which was found at the establishment of Mr. A. O'Neill in No. 133 Mott street, comes up under two sections of this act of 1868— the 43d section and the 96th section. The property was seized on the 17th of April, 1869, and, with reference to the questions involved in this case, it must be divided into three lots or parcels. The first lot consists of the empty barrels found on the premises, with tax paid stamps thereon not effaced or obliterated. The second lot consists of the distilled spirits and liquors found there, owned by Mr. O'Neill. The third lot consists of the property found there other than the empty barrels and the distilled spirits and liquors. This property, as appears by the records of this court, has, all of it, been delivered up, on appraisement, to the claimant, the government accepting voluntarily, through the consent of the district attorney, in place of the property seized, what it regarded as satisfactory bonds therefor.

Under the evidence in this case. there is no doubt, upon the law, as the court will lay it down to you, that the empty barrels must be condemned. There is, also, no doubt that the property seized other than the empty barrels and the distilled spirits and liquors must be released. That property, by the inventory, amounts to the sum of $173.65, consisting of forty-two standing casks. two reservoirs, two pumps, one safe, ninety-four

demijohns, and five empty kegs; and, in respect to that, your verdict must be for the claimant. In respect to the empty barrels, your verdict must be for the United States. The only question in dispute is as to the distilled spirits and liquors, which appear, by this appraisement, to have been appraised at a very few dollars differing from $4,700, embracing all the liquors found there, not merely the distilled spirits, but a quantity of wine also.

The condemnation of the distilled spirits and liquors, embracing the wines, is sought under the 96th section of the act, which provides that, if any distiller, rectifier, wholesale liquor dealer, or compounder of liquors, shall knowingly and wilfully omit, neglect, or refuse to do or cause to be done any of the things required by law in the carrying on or conducting of his business, or shall do anything prohibited by the act, if there be no specific penalty or punishment imposed by any other section of the act for the neglecting, omitting, or refusing to do, or for the doing or causing to be done, the thing required or prohibited, he shall pay a penalty of one thousand dollars, and all distilled spirits or liquors owned by him, or in which he has any interest as owner, shall be forfeited to the United States. You have heard the discussion by the counsel representing the government and the counsel representing the claimant in regard to the interpretation of this section, and also the suggestions made by the court in the course of the trial, respecting the proper interpretation of it. The views so suggested, I shall now repeat, as they are important, not merely with reference to this case, and to your action upon it, but with reference, also, to other cases and to the law generally. This 96th section provides, that if a rectifier, wholesale liquor dealer, or compounder of liquors—(and it is undisputed that Mr. O'Neill was a wholesale liquor dealer, and had paid the proper special tax to become so)—shall knowingly and wilfully omit, neglect, or refuse to do, or cause to be done, any of the things required by law in the carrying on or conducting of his business, or shall do anything prohibited by the act, if there be no specific penalty or punishment imposed by any other section of the act, for the neglecting, omitting, or refusing to do, or for the doing or causing to be done, the thing required or prohibited, he shall pay a penalty of one thousand dollars. The language is marked. In the first place, it imposes this penalty of one thousand dollars only for a knowing and wilful omission, neglect, or refusal, in case there is no specific penalty or punishment imposed by any other section of the act, for the neglecting, omitting, or refusing—not for the knowingly and wilfully neglecting, omitting, or refusing, but for the mere neglecting, omitting, or refusing—to do the things required or prohibited by law. Therefore, the meaning of the section, thus far, is, that if no specific penalty or punishment is imposed by any other section of the act, for the mere neglect, omission or refusal, whether wilful and knowing or not, then, if the individual is guilty of a knowing and wilful omission, neglect, or refusal, he shall pay a penalty of one thousand dollars. In other sections of the act, congress has provided various penalties and punishments for mere neglects, omissions, and refusals, without reference to whether they are knowing and wilful or not. It now provides a general enactment, in which it says, in effect: "We have imposed various penalties and punishments for neglects, omissions and refusals to do various things; but, if there be anything prohibited, or prescribed as necessary to be done, for the neglect, omission, or refusal to do which, or for the doing of which, we have not already provided penalties and punishments, we here declare, that we do not intend to impose any penalty or punishment for such mere neglect, omission, refusal, or doing; but if, in respect to any such thing, there has been any knowing and wilful neglect, omission, refusal, or doing, for that we impose a penalty of one thousand dollars." That is the plain meaning of this section, thus far. It then goes on to say, that, in addition, if the individual is guilty of such knowing and wilful omission, neglect, refusal, or doing, he shall therefor, if he is a distiller, rectifier, wholesale liquor dealer, or compounder of liquors, forfeit all the distilled spirits and liquors owned by him, or in which he has any interest as owner. He does not forfeit the vessels used by him in his business, but he forfeits only distilled spirits and liquors. Now this is not at all an unusual provision in the internal revenue laws of the United States. On the contrary, this provision, in the act of 1868, is very much mitigated from the provisions of the act of March 2d, 1867. The 25th section of that act (14 Stat. 483) contained provisions much more stringent than the provisions of this 96th section of the act of 1868. It provided, that the owner, agent, or superintendent of any still, boiler, or other vessel used in the distillation of spirits, who should neglect or refuse to make true and exact entry and report of the same, or to do or cause to be done any of the things by law required to be done concerning distilled spirits, should, in addition to other fines and penalties then by law provided, forfeit, for every such neglect or refusal—whether wilful or not, whether with the intent to defraud the government or not—all the spirits made by or for him, and all the vessels used in making the same, and the stills, boilers, and other vessels used in distillation, and all materials fit for use in distillation, found on the premises, together with the sum of five hundred dollars for each offence, to be recovered with costs of suit, and should be deemed guilty of a misdemeanor, and be subject to imprisonment for a term not exceeding one year. Therefore, the 96th section of the act

of 1868, while preserving the principle of the forfeiture of property, very much mitigates the provisions of the act of 1867. Under this 96th section, if Mr. O'Neill, being a wholesale liquor dealer, has knowingly and wilfully neglected, omitted or refused to do or cause to be done, any of the things required by law in the carrying on or conducting of his business, all the distilled spirits and liquors owned by him, or in which he has any interest as owner, are forfeited to the United States; and such distilled spirits and liquors, being seized and prosecuted in this case, are to be condemned, provided the facts are found to exist which the 96th section requires to exist in order to warrant such forfeiture.

It is alleged, on the part of the government, that O'Neill, being a wholesale liquor dealer, knowingly and wilfully omitted, neglected and refused to do two several things required by law to be done by him in the carrying on or conducting of his business. It is alleged, in the first place, that he omitted and neglected to do what he was required by the 43d section of this same act to do in regard to the carrying on of his business. That section provides, that it shall be the duty of every person who empties or draws off, or causes to be emptied or drawn off, any distilled spirits from a cask or package bearing any mark, brand, or stamp required by law, at the time of emptying such cask or package, to efface and obliterate such mark, stamp, or brand. At the first blush this might seem to you to be a very trifling matter. What difference does it make whether or not this obliteration is done at the moment of emptying the barrel? What difference does it make when it is done, provided O'Neill does not part with the barrel to anybody else, or sell it, or suffer it to go out of his possession, until he has effaced and obliterated the stamp? The nature and purpose of the provision are shown by the further language of this same 43d section, which shows the importance that congress attaches to this matter. This "stamp" on a barrel, of which you have heard so much in this case, is the mode by which the government now collects a tax, to the amount of fifty cents per gallon, on distilled spirits. On a barrel full of spirits, a stamp, indicating that the tax upon such barrel of spirits has been paid, represents to the government the sum of about twenty dollars. Where the tax on a barrel of spirits has been paid, and the tax-paid stamp has been legitimately put on such barrel, if the spirits are taken out of it, the empty barrel remains, with the stamp upon it, indicating that the tax has been paid; and, if some other spirits, on which no tax has been paid, can be illicitly put into that barrel, which thus has a tax-paid stamp upon it, such barrel can be put into the market, carrying with it the index that the tax on the spirits therein has been paid, and the chances are ninety-nine in a hundred that the government will be defrauded, on

every such barrel of spirits, out of the sum of twenty dollars. The sense that congress had of this danger is shown, as I have said, by the further provision of the 43d section: "Any person who shall fail or neglect to efface and obliterate said mark, stamp, or brand, at the time of emptying such cask or package, or who shall receive any such cask or package, or any part thereof, with the intent aforesaid, or who shall transport the same, or knowingly aid or assist therein, or who shall remove any stamp provided by this act from any cask or package containing, or which had contained, distilled spirits, without defacing and destroying the same at the time of such removal, or who shall aid or assist therein, or who shall have in his possession any such stamp so removed as aforesaid, or have in his possession any cancelled stamp, or any stamp which has been used, or which purports to have been used, upon any cask or package of distilled spirits, shall be deemed guilty of a felony, and, on conviction, shall be fined not less than five hundred dollars nor more than ten thousand dollars, and imprisoned not less than one year nor more than five years." There is, as you perceive, no discretion given to the court whether to fine or imprison for the offence. The offender must be fined and also imprisoned not less than one year nor more than five years. Why this severe penalty? Because the matter of the offence is a vital one, under the law. The essence of the requirement is, that the stamp shall be effaced and obliterated at the time any distilled spirits are emptied or drawn off from the cask or package, so that there shall be no opportunity given for the commission of fraud, and so that the empty casks or packages, with the unobliterated and uneffaced tax-paid stamps upon them, shall not be suffered to lie exposed in the public street, as was the practice at Mr. O'Neill's establishment, according to his own testimony, where they may be stolen, or be put into a shed, as in this case, whence they may be carried away, either with or against the will of their owner. The law requires that no opportunity shall be offered for a second use of the tax-paid stamps. Therefore, it is of no consequence, under this section, what the intent of Mr. O'Neill was. It is of no consequence that he himself never sold an empty barrel, or parted with one, until he had obliterated the stamps upon it. It is of no consequence that he had no intent to defraud the revenue himself, in not obliterating the stamps, if he knowingly and wilfully omitted to obliterate them.

The next question is—what is meant by the words "knowingly and wilfully," in the 96th section? They do not mean, as was argued to you by the counsel for the claimant, that the person must be shown to have known what the law was and to have acted wilfully against it. Every man is presumed and must be held to know the law. The

question is not, whether Mr. O'Neill omitted to obliterate the stamps knowing or not knowing what the law was. The question is whether he knew the fact that the stamps were not obliterated, and whether it was his will and pleasure, freely and voluntarily exercised, that they should not be obliterated, at the time the contents of the barrels were drawn off from them. You will observe that the language of the 96th section is "knowingly and wilfully," not "knowingly or wilfully." A person might empty the contents of a barrel of spirits, and, at the very instant after that was done, and before he had time to obliterate the stamp, another person might steal and carry away the barrel. In that case, the person who emptied the spirits from the barrel would know that the stamp had not been obliterated at the time of emptying the barrel, but the omission to obliterate the stamp would not be a wilful act on the part of such person. The law says that the omission or neglect must be both knowing and wilful.

Mr. O'Neill in his testimony, states very frankly, that he did not pretend, in any case whatever, to obliterate any tax-paid stamp on any emptied barrel until he came to sell such barrel. He tells you that it was his regular habit not to obliterate the stamps at the time of emptying the barrels. The empty barrels which were found on his premises were full of spirits when they were brought upon his premises, and such spirits were emptied therefrom on his premises. The stamps on the barrels were not obliterated at the time such spirits were emptied. On that testimony, it is for you to say whether Mr. O'Neill knew that the stamps on the barrels were not obliterated or effaced when the contents of the barrels were emptied, and whether it was an act of his free will that they were not then obliterated and effaced. If so, then his neglect and omission to do what the 43d section required him to do, was a knowing and wilful neglect and omission. The question of his intent in respect to the future disposition of the barrels has nothing to do with the case. No man has a right to set up a construction of the law for himself. No man has a right to furnish an opportunity to others to steal from his possession emptied spirit barrels with unobliterated tax-paid stamps on them; and to fill them with spirits on which the tax has not been paid. It is his duty to obliterate the stamps at the time the contents of the barrels are emptied out. The only question for your consideration is, whether O'Neill knew the fact that the stamps had not been obliterated, and whether his omission to obliterate them was an act of his will or was against his consent.

The other alleged knowing and wilful omission, neglect or refusal on the part of Mr. O'Neill to do a thing required by law to be done by him, in the conducting of his business as a wholesale liquor dealer, arises under the 45th section of the act of 1868, which requires that "every rectifier, wholesale liquor dealer and compounder of liquors shall provide himself with a book"—I call your attention particularly to the language of this section,—"shall provide himself with a book, to be prepared and kept in such form as shall be prescribed by the commissioner of internal revenue, and shall, on the same day on which he receives any spirits, and before he shall draw off any part thereof, or add any water or anything thereto, or in any respect alter the same, enter in such book, and in the proper columns respectively prepared for the purpose, the date when, the name of the person or firm from whom, and the place whence, the spirits were received, by whom distilled, rectified or compounded, and when and by whom inspected, and, if in the original package, the serial number of each package, the number of wine gallons and proof gallons, the kind of spirits, and the number and kind of adhesive stamps thereon; * * * and, if any rectifier, wholesale dealer or compounder of liquors shall refuse or neglect to provide such book, or to make entries therein, as aforesaid, * * * he shall pay a penalty of one hundred dollars, and, on conviction, shall be fined not less than one hundred dollars, nor more than five thousand dollars, and imprisoned not less than three months, nor more than three years." The penalty of one hundred dollars, and this fine and imprisonment on conviction, are provided for the refusal or neglect to make the entries, whether the refusal or neglect is knowing and wilful or not. It is the refusal or neglect that is to be punished, without regard to the question of intent, knowledge or wilfulness. The requirements of the 45th section in regard to rectifiers, wholesale liquor dealers and compounders of liquors, differ, in a very marked manner, from the provisions of the 19th section of the same act, in regard to distillers, showing that congress intended something by the difference. The 45th section requires, that the rectifier, wholesale liquor dealer and compounder of liquors shall enter in a book the things specified in the section, and it provides, that if he shall refuse or neglect to make the entries, or shall make any false entry, he shall be subject to the penalty and punishment therein prescribed. It does not provide that any one else may make the entries, nor does it impose any penalty or punishment upon any one else for omitting to make the entries or for making false entries, or upon the rectifier, wholesale liquor dealer or compounder of liquors, if any other person omits to make the entries, or makes false entries. It requires the principal himself to make the entries, and it imposes the penalty and punishment upon him solely. It does not say that the penalty and punishment shall be imposed if there shall be a neglect to make the proper entries, or if any false entries shall be made; but it imposes the penalties

upon the principal himself alone, if he fails to make the proper entries or if he makes false entries. Turning to the section in regard to distillers, the 19th, we find its provisions to be very different. It says. that the distiller "shall, from day to day, make, or cause to be made, true and exact entry, in a book," etc.; and then it goes on to provide that, if any false entry shall be made, or if any entry required to be made shall be omitted, a given penalty shall be paid by the distiller—a very proper provision, because he is bound, either to make the entries himself, or to cause them to be made, and he is, therefore, made responsible for the acts and omissions of other persons, in this respect. Not so with the rectifier, the wholesale dealer, and the compounder of liquors, under the 45th section. The 19th section then goes on to provide, that any person making a false entry, or omitting to make any required entry, with intent to defraud, shall, on conviction, be punished by fine and imprisonment. Therefore, in the present case, it was the duty of O'Neill to make the entries himself in his book, and he had no right to delegate the making of them to any other person. The difference between the requirements in regard to the wholesale liquor dealer, and those in regard to the distiller, are marked and intentional. As O'Neill had no right to delegate the making of the entries in his book to any other person. the fact, if it be such, that he gave a general direction to his clerk to make proper entries, is utterly unimportant. Under this law, it was his business to make the entries himself; and the only question for your consideration is, whether, in fact, he knew that the five barrels of spirits proved to have been purchased and received by him from McNierny, were not entered in his book, and whether the nonentry of them, on his part, was an act of his will, or was against his will.

If, therefore. O'Neill knowingly and wilfully—as those terms have been explained to you—omitted or neglected to obliterate the stamps from the barrels referred to, at the time their contents were dumped, then, for that cause alone, without reference to the question of non-entry in the book, all the spirits and liquors under seizure are forfeited to the United States. And so, also, if he knowingly and wilfully omitted or neglected to enter in his book the five barrels referred to, all the spirits and liquors seized are, for that cause, forfeited to the United States.

The counsel for the claimant presented the following requests to the court, to charge the jury, which requests were refused by the court:

1. The simple fact that O'Neill omitted to erase the stamps on certain barrels at the time of emptying them, knowing that they were not erased, is not sufficient, under section 96, to justify a verdict of condemnation for a violation of section 43, for knowingly and wilfully violating that section, but the jury must believe that there was some wrongful intent in such omission.

2. The forfeiture imposed by section 96 of the act, applies only to offences for which there is no specific penalty or punishment imposed by any other section of the act; and, as all the offences complained of in this case, to wit, the offences against section 45 and section 43, are punished by a specific punishment imposed by those sections, section 96 has no application to this case, and, upon this section, the jury must find for the claimant.

3. If the jury shall believe that it was the bona fide intention of the claimant, at the time of emptying the barrels referred to, that none of the barrels should be refilled with spirits, by himself or any other person, without previous erasure of the stamps, and that the stamps upon none of said barrels should be removed by any person, and used upon any other barrel of spirits, then the offence against section 43, by the claimant. is not such as works a forfeiture under section 96.

The jury found a verdict for the United States as to the empty barrels and the distilled spirits and liquors. and for the claimant as to the rest of the property seized.